M. Hinson *v.* R. M. Hinson ; R. M. Hinson *v.* M. Hinson.—Consolidated Cases.

The statute of Alabama concerning frauds and fraudulent conveyances, (Clays' Ala. Dig. p. 254, s. 2,) was intended to protect creditors of, and purchasers from, the party in possession. As to them only, a loan or conveyance with the reservation of the use, is to be taken as fraudulent and the absolute property to be with the possession.

The title of one who holds a slave under a loan, and who is liable to deliver it up when called for, is precarious, and insufficient to form the basis of a plea of prescription.

APPEAL from the District Court of Morehouse, *Barry,* J.

*Robertson, Boatner,* and *Todd,* for *M. Hinson,* appellant. *McGuire & Ray,* for *R. M. Hinson.*

SPOFFORD, J. Whether the original action be regarded as possessory or petitory, we do not think any useful purpose can be subserved by discussing the exceptions to the cross action which was consolidated with it.

It is enough that the necessary parties are now before the court; that both have furnished all the available evidence of their respective titles, and that the question, which shall prevail, can probably be as well determined now as by remanding the cause. It is especially desirable to terminate litigation in a case of this kind, which involves a heavy outlay of costs, and presents the disagreeable spectacle of a family dissension.

*Martha F. Hinson* is the sister of *Robert M. Hinson ;* both reside in the parish of Morehouse, and are the children of *Robert Hinson,* of Lowndes county, Alabama, who died since this litigation commenced.

Both parties set up a title to the slave *Chat* or *Charity,* derived from their father in his lifetime.

The only written evidence produced by the plaintiff, *Martha Hinson,* is an act *sous seing privé* of the following tenor :

"October 22, 1845.

"Know all men by these presents, that I, *John Hinson,* doth loan a negro girl by the name of *Chat,* to my daughter, *Martha Beard,* that is to remain in her hands until I call for ; and if I call not, the said girl and increase to remain to my daughter's heirs.          (Signed)          JOHN HINSON."

This act is dated just before the removal of *Martha Hinson,* with her husband, *Beard,* to Louisiana. But she had possession of the negro before this date, and indeed for the greater part of the time since 1842.

Her counsel contend that the act of October 22d, 1845, was a recognitive act, which acknowledged a previous donation. We draw quite the opposite conclusion from this instrument. It was given to her on the eve of her removal to Louisiana, and was probably intended to guard against any inference being drawn from her continual possession, that she had an absolute title.

But it is contended that the property vested in *Martha Hinson,* by reason of her three years' possession in Alabama, and we are referred to the statute of that State concerning frauds and fraudulent conveyances, in support of the position. Clays' Ala. Dig. p. 254, s. 2.

But that statute was evidently designed only to protect creditors of, and purchasers from, the party in possession ; as to them only, a lo anor a conveyance,

with the reservation of the use, is to be taken as fraudulent, and the absolute property to be with the possession.

This case is not complicated by any consideration of the rights of creditors or purchasers, and we do not find that a title vested in the plaintiff by the laws of Alabama.

She cannot have acquired the slave by prescription in Louisiana, for, holding under the precarious title we have recited, she did not possess as owner.

The plaintiff's sale to *Ross*, with the faculty of redemption, of which she afterwards availed herself, left matters where they stood before ; one who possesses property without a title, cannot acquire title by selling the property and buying it back.

*Martha Hinson*, then, has failed to establish her title to the slave.

*Robert M. Hinson* claims under a deed from *John Hinson*, of the following tenor :

"STATE OF ALABAMA, Lowndes County.

"Know all men by these presents, that *John Hinson*, of said county and State, for and in consideration of the sum of seven hundred dollars to me in hand paid, I have granted, bargained, sold, and by these presents do hereby grant, bargain and sell, unto my son, *Robert M. Hinson*, a certain negro girl, named *Chat* or *Charity*, aged about eighteen years, of dark complexion, now in the possession of *Martha Beard*, of the parish of Morehouse, to have and to hold unto the said *Robert M. Hinson*, all my right, title and interest thereto, his heirs and assigns, to his and their own proper use, benefit and behoof, forever, in fee simple.

"In testimony whereof, I have hereunto signed my name in presence of the undersigned witnesses, this, the 12th day of April, A. D., 1851.

"(Signed,) JOHN HINSON."

It is objected by the plaintiff, that this deed is void, because it was unaccompanied by a delivery of the property. The vendor gave the vendee a delivery order on his daughter, the plaintiff herself, to whom, by her own showing, he had loaned the slave subject to his call. She surely cannot be permitted to set up her own refusal to obey this order, as a reason for defeating the defendant's title.

Again : it is objected that there was no real consideration for the sale. The plaintiff has pleaded no such defence to the suit of *Robert Hinson*, as to authorize her to inquire into the consideration.

Lastly : it is said that at the time of the execution of the deed, *John Hinson*, was incapable of contracting, by reason of insanity.

This plea is not established to our satisfaction. It appears that in 1840, an accident befell him, which had the effect somewhat to impair his intellect. In 1849, an *inquisitio de lunatico inquirendo*, was had before the Orphans' Court of Lowndes county, with a view to test the question and to appoint a guardian for him, if it should be found necessary ; but a jury of his neighbors found that he was capable of taking care of himself and his property, whereupon the proceedings were dismissed.

It is not shown that he became any worse after this investigation, up to the time the act in question was executed, and the presumption is, that he continued capable to transact business. There is also positive evidence to corroborate the presumption.

HINSON
v.
HINSON.

It is insisted, that the District Judge erred in rejecting an inventory of the effects of *John Hinson*, deceased, taken in the parish of Morehouse, which was offered in evidence by the plaintiff, and upon which the slave *Charity* figures. If it were admitted, it could not help her cause, for it shows that *Robert M. Hinson* protested against the slave *Charity* being included in the inventory, claiming her as his own.

As we find the verdict of the jury to be in accordance with the law and evidence, it is ordered that the judgment of the District Court rendered in pursuance thereof, be affirmed, with costs.